UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JENNIFER L. SCHMID, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 4:13-CV-1429-SPM |
| | ) |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

The following opinion is intended to be the opinion of the court judicially reviewing the Commissioner's denial of an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, filed by Plaintiff, Jennifer L. Schmid. This court has jurisdiction because 42 U.S.C. § 405(g) provides for judicial review of a "final decision" of the Commissioner of the Social Security Administration and because the parties have consented to have a United States Magistrate Judge dispose of this case, including entry of final judgment. (Doc. 7). For the reasons stated below, the Commissioner's decision will be affirmed.

### I. BACKGROUND

Plaintiff Jennifer L. Schmid filed for benefits under the Social Security Act on July 2010, claiming disability due to lower back disk fusion, bulging disk, spondylolisthesis, a heart condition, depression, and anxiety. (Tr. 214-15, 247). Plaintiff originally alleged that she had been disabled since October 22, 2009, but she amended her alleged onset date to January 27, 2010. (Tr. 242, 247). Plaintiff's application was initially denied, and she filed a request for a hearing by an administrative law judge ("ALJ"). (Tr. 162-67, 171). On April 3, 2012, after a

hearing, the ALJ issued an unfavorable decision. (Tr. 109-22). Plaintiff requested review by the Social Security Administration's Appeals Council and submitted additional evidence in support of her request. (Tr. 6-108). After considering the additional evidence, the Appeals Council denied her request on May 24, 2013. (Tr. 1-5). Thus, the ALJ's decision stands as the final decision of the Commissioner.

## II. STANDARD FOR DETERMINING DISABILITY UNDER THE SOCIAL SECURITY ACT

To be eligible for benefits under the Social Security Act, a plaintiff must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec. of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the

Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. §§ 404.1520(e). At Step Four, the Commissioner determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that,

given the claimant's age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

### III. THE ALJ'S DECISION

The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2014; has not engaged in substantial gainful activity since October 22, 2009; has the severe impairments of arthritis of the lumbar spine with residual effects of fusion surgery, obesity, and aortic stenosis; does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1; has the residual functional capacity to perform the full range of sedentary work as defined in 20 C.F.R. §404.1567(a); and is capable of performing her past relevant work as a data entry clerk, personal assistant, receptionist, and order puller. Based on these findings, the ALJ ruled that Plaintiff has not been under a disability as defined by the Social Security Act. (Tr. 112-118).

In appealing the Commissioner's decision, Plaintiff argues that (1) the Commissioner erred by failing to find that Plaintiff's depression and anxiety were severe impairments, particularly in light of new evidence submitted to the Appeals Council; and (2) the Commissioner failed to fully develop the record regarding Plaintiff's past relevant work.

### IV. DISCUSSION

#### A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724

(8th Cir. 2002); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore*, 572 F.3d at 522). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "'If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'" *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B. Substantial Evidence Supports the Commissioner's Finding That Plaintiff's Depression and Anxiety Are Not Severe Impairments

Plaintiff's first argument is that the Commissioner erred by not including depression and anxiety among Plaintiff's severe impairments, particularly in light of new evidence submitted to the Appeals Council. Where, as here, the claimant submits additional evidence after the ALJ's decision is rendered, and the Appeals Council considers that evidence but denies review, the court "must determine whether the ALJ's decision was supported by substantial evidence on the record as a whole, including the new evidence." *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007). Thus, the court will consider both the evidence before the ALJ and the evidence submitted to the Appeals Council.

To show that an impairment is severe, Plaintiff must establish (1) a medically

determinable impairment or combination of impairments, (2) that significantly limits her physical or mental ability to perform basic work activities, without regard to age, education, or work experience. *See* C.F.R. §§ 404.1520(a)(4)(ii),(c); 404.1521(a). Although the requirement of severity is not an "onerous requirement," it is "not a toothless standard." *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007).

When considering the severity of mental impairments, the Commissioner should consider four functional areas: "Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a(c)(3). When the degree of limitation in the first three functional areas is rated as "none" or "mild," and the finding in the fourth area is "none," the Commissioner will generally conclude the impairment is not severe, unless the evidence otherwise indicates there is more than a minimal limitation in the ability to do basic work activities. *Id.* § 404.1520a(d)(1).

Here, the ALJ acknowledged in his decision that Plaintiff had a medically determinable impairment of depression and had seen a counselor, but he found that Plaintiff's depression did not cause more than minimal limitation in her ability to perform basic mental work activities. (Tr. 114). He noted that she had never been evaluated by a psychiatrist or psychologist, that the record showed that her symptoms were variable, and that examination findings generally did not show depression. (Tr. 115). The ALJ also examined the four functional areas and found that she had only mild limitations in activities of daily living; social functioning; and concentration, persistence, or pace; and had experienced no episodes of decompensation of extended duration. (Tr. 115).

An examination of the record shows that the ALJ's conclusion was supported by substantial evidence. At the hearing, Plaintiff alleged that in addition to pain from her

fibromyalgia and fatigue from her heart condition, she had depression and anxiety, had the symptom of crying, and sometimes felt like she wanted to die. (Tr. 143). However, the records dated between Plaintiff's alleged onset date (January 27, 2010) and the date of the ALJ's decision (April 3, 2012) show that although Plaintiff sometimes complained to her treatment providers of anxiety and depression, those conditions were generally well managed with medication and did not cause significant functional limitations.

In January 2010, Plaintiff complained of depression and anxiety, and she was prescribed Celexa (citalopram). (Tr. 311-12). She returned to the clinic at least ten times for various ailments in 2010, and mental symptoms were rarely mentioned and were sometimes specifically noted to be absent. (Tr. 294-312). In November 2010, notes state that her medication had helped her, she had no anxiety or depression, and her mood was euthymic. (Tr. 297-98).

At various points in 2011 and 2012, Plaintiff did report symptoms of depression and anxiety; however, the record indicates that her symptoms were generally controlled when she was on medication. Plaintiff's most significant reports of depression symptoms were in early 2011, a period in which she had been taken off of Celexa by her pain doctor. (Tr. 352-54, 346-49, 382). During that period, Plaintiff cried in her treatment provider's office, was observed to have mood abnormalities, and was diagnosed with moderate recurrent major depression. (Tr. 347-49, 352-54, 382). However, at visits in March and April 2011 (after she restarted Celexa), her review of symptoms was negative for depression (Tr. 482-83, 485); at visits in May, July, August, September, October, and December 2011, her mood was "appropriate" or "pleasant" (Tr. 487, 489, 492, 495, 497, 563); at visits in in July and August 2011 she reported that she was not having any more panic attacks (Tr. 341, 556); at a visit in August 2011 she reported that her mood had improved with Celexa and she was not crying anymore (Tr. 556); and at a visit in

November 2011 she reported that she was calmer and crying less on Celexa (Tr. 563). Although Plaintiff reported depression, anxiety, stress, or crying at some visits in mid-to-late 2011 (Tr. 337-38, 548, 561) and was diagnosed in February 2012 with anxiety state unspecified (Tr. 577), she did not report significant functional limitations from her mental conditions at these visits, nor did her treatment providers note any. Indeed, even in Plaintiff's own testimony, she did not explain how her depression and anxiety limited her ability to function.

The above evidence supports the ALJ's determination that Plaintiff's mental impairments were not severe. *See Kirby*, 500 F.3d at 707-08 (8th Cir. 2007). ("An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities.").

The evidence submitted to the Appeals Council that was dated after the ALJ's decision does not alter the court's conclusion. "[M]edical evidence obtained after an ALJ decision is material if it relates to the claimant's condition on or before the date of the ALJ's decision." *Cunningham v. Apfel*, 222 F.3d 496, 502 (8th Cir. 2000) (finding that evidence from a treating psychologist dated after the relevant time period was material where the psychologist stated that the plaintiff had been disabled since the plaintiff's alleged onset date). Plaintiff submitted records showing that from May 2012 to October 2012, she was seen at Pathways Community Behavioral Healthcare and by her nurse practitioner for treatment of depression and anxiety. (Tr. 8-60, 65-66, 90-97). During this period, Plaintiff was diagnosed with major depressive disorder, recurrent; borderline personality disorder; generalized anxiety disorder; and panic disorder with agoraphobia (Tr. 11, 41, 50); was assigned Global Assessment of Functioning scores of 47 and

50[1] (Tr. 11, 41); met with a counselor about once a week to discuss her stressors and strategies for relaxation (Tr. 19-56); and was observed to have a depressed or anxious mood and related symptoms at times (Tr. 9, 19, 23, 25, 27, 29, 53). However, as the Appeals Council noted, these records describe Plaintiff's condition after the date of the ALJ's decision, and do not show that her mental impairments were severe during the relevant time period (prior to April 3, 2012). (Tr. 2). Notably, in these records, none of Plaintiff's treatment providers indicated that they were describing a condition that had existed during the relevant disability period, nor did they suggest that Plaintiff's depression and anxiety caused any work-related limitations during the relevant disability period. To the extent that these records suggest that Plaintiff's mental condition worsened after April 3, 2012, Plaintiff's recourse is to file a new application for benefits with later disability onset date. *See, e.g., Tarwater v. Astrue*, No. 4:10CV1974 LMB, 2012 WL 381783, at *18 (Feb. 6, 2012) (finding substantial evidence supported the Commissioner's decision despite the existence of treatment notes dated shortly after the ALJ's decision suggesting that Plaintiff's mental condition had worsened; stating, "If plaintiff's condition worsens, plaintiff's recourse is to file a new application for benefits, alleging an onset of disability after the date of the ALJ's decision in this case.").

In sum, in light of the contemporary evidence from the relevant time period that shows that Plaintiff's mental impairments were mild and controlled by medication during the relevant

---

[1] The Global Assessment of Functioning Scale (GAF) is a psychological assessment tool wherein an examiner is to "[c]onsider psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness"; it does "not include impairment in functioning due to physical (or environmental) limitations." *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV)*, 32 (4th ed. 1994). A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *DSM-IV* 32.

time period, the court finds that the ALJ's conclusion is supported by substantial evidence, even when the new evidence submitted to the Appeals Council is considered.

### C. The ALJ Sufficiently Developed the Record Regarding Plaintiff's Past Relevant Work

Plaintiff's second argument is that the ALJ failed to sufficiently develop the record regarding Plaintiff's past relevant work. At Step Four of the five-step disability evaluation process, the ALJ was required to evaluate whether, with her RFC, Plaintiff could perform her past relevant work. *See Wagner v. Astrue*, 499 F.3d 842, 853 (8th Cir. 2007). Plaintiff is not disabled if she can perform either "[t]he actual functional demands and job duties of a particular past relevant job" or "[t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy." *Id.*; *see also Lowe v. Apfel*, 226 F.3d 969, 973 (8th Cir. 2000).

The Eighth Circuit has consistently held that an "'ALJ has a duty to *fully* investigate and make *explicit* findings as to the physical and mental demands of a claimant's past relevant work and to compare that with what the claimant herself is capable of doing before [the ALJ] determines that she is able to perform her past relevant work.'" *Young v. Astrue*, 702 F.3d 489, 491 (8th Cir. 2013) (quoting *Nimick v. Sec'y of Health & Human Servs.,* 887 F.2d 864, 866 (8th Cir. 1989)); *see also Groeper v. Sullivan*, 932 F.2d 1234, 1238 (8th Cir. 1991). In investigating the demands of the claimant's past relevant work, the ALJ may rely on the claimant's description of her actual job, or the ALJ may look to how the job is performed in the national economy. *See Stephens v. Shalala*, 50 F.3d 538, 542 (8th Cir. 1995); *Wagner*, 499 F.3d at 853; 20 C.F.R. § 404.1560(b)(2). The testimony of a Vocational Expert may be used at this step to obtain relevant evidence of the physical and mental demands of a claimant's past relevant work, "either as the claimant actually performed it or as generally performed in the national economy." 20

C.F.R. § 404.1560(b)(2). Such testimony "may be helpful in supplementing or evaluating the accuracy of the claimant's description of [her] past work." *Id.*

Here, the record regarding Plaintiff's past work was well developed, and the ALJ made the required findings regarding that work. The Vocational Expert reviewed Plaintiff's vocational evidence and testified at the hearing that that Plaintiff's past work included work as a data entry clerk (sedentary, semi-skilled, SVP 4[2]), personal assistant (sedentary, skilled, SVP 7 as generally performed and SVP 6 as performed by Plaintiff), and receptionist (sedentary, semi-skilled, SVP 3). (Tr. 153). In addition, in her Work History Report, Plaintiff provided descriptions of those jobs that were consistent with the requirements of sedentary work. (Tr. 256-58).[3] The ALJ then compared Plaintiff's RFC (an ability to perform the full range of sedentary work) with the demands of Plaintiff's past relevant work (sedentary), and properly determined that she could perform her past work as a data entry clerk, personal assistant, and receptionist. (Tr. 118). Plaintiff offers no explanation of why this analysis was insufficient.

---

[2] The SVP ("specific vocational preparation") level for a particular job is the "amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Dictionary of Occupational Titles* (*DOT*), App'x. C, 1991 WL 688702. A job with an SVP of 4 takes three to six months to learn; a job with an SVP of 6 takes one to two years to learn; and a job with an SVP of 3 takes one to three months to learn. *Id.* Plaintiff does not argue that her past work did not satisfy these time requirements, and her Work History Report is consistent with a finding that she did. (Tr. 255).

[3] As to the data entry clerk and personal assistant jobs, Plaintiff indicated that these jobs involved lifting less than ten pounds at a time and walking or standing at most two hours each day. (Tr. 255-57); 20 C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time . . . Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties."); Social Security Ruling 83-10, 1983 WL 31251, at *5 (stating that sedentary work generally involves standing or walking no more than about two hours out of an eight-hour day). Plaintiff's description of the receptionist job is somewhat less clear, as she indicated that she stood and walked "as needed." (Tr. 258). However, the Vocational Expert testified that the job of receptionist is sedentary. (Tr. 153); *see also DOT* No. 237.367-038.

The ALJ also found that Plaintiff could perform past relevant work as an "order filler," which he said was a sedentary job. (Tr. 118). As Plaintiff correctly points out, neither the Vocational Expert's testimony nor Plaintiff's Work History Report contains a sedentary job matching this description. However, in light of the ALJ's well-supported findings that Plaintiff could perform three other past jobs, I find the ALJ's error in identifying the order filler job had no effect on the outcome of the case and does not require reversal. *See Brueggemann v. Barnhart,* 348 F.3d 689, 695 (8th Cir. 2003) (applying harmless error analysis and noting that the standard is "whether the ALJ would have reached the same decision denying benefits" even absent the error); *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999) ("We have consistently held that a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case.").

V. **CONCLUSION**

For all of the foregoing reasons, the Commissioner's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**. The court will issue a judgment consistent with this opinion.

/s/Shirley Padmore Mensah
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 24th day of September, 2014.